**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| **WILLIAM E. POWELL,** |
| **Plaintiff,** |
| **v.** |
| **INTERNAL REVENUE SERVICE,** |
| **Defendant.** |

Civil Action No. 18-2675 (JEB)

## MEMORANDUM OPINION

This case is but another chapter in *pro se* Plaintiff William E. Powell's long-running, and at times quixotic, quest to obtain tax records related to himself, his deceased family members, and his family's printing business.  After sending myriad Privacy Act and Freedom of Information Act requests to Defendant Internal Revenue Service, Powell brought this action alleging that he received little response.  The Service now moves to dismiss a number of Plaintiff's claims, arguing that they are either barred by collateral estoppel or are moot. Separately, Defendant asks for summary judgment on the other claims, maintaining that it performed an adequate search for the documents and that Powell failed to exhaust the required administrative remedies before attempting to open the courthouse doors.  Largely agreeing, the Court will grant the Government's Partial Motion to Dismiss and will grant in part and deny in part its Partial Motion for Summary Judgment.

## I.    Background

In the last few years, this Court has issued numerous Opinions detailing Powell's disputes with the IRS and other federal agencies over multiple tax records.  See, e.g., Powell v. Social

Sec. Admin., No. 18-847, 2018 WL 4840356, at *1–2 (D.D.C. Oct. 4, 2018); Powell v. IRS, 317 F. Supp. 3d 266, 270–72 (D.D.C. 2018); Powell v. U.S. Dep't of Treasury Office of Foreign Assets Control, 317 F. Supp. 3d 551, 553 (D.D.C. 2018); Powell v. IRS, 280 F. Supp. 3d 155, 157–59 (D.D.C. 2017).  It will not recount the history of those clashes here but will instead focus on the procedural background relevant to the instant Motions.

Powell initially filed this action on October 29, 2018, see ECF No. 1 (Complaint), and followed up with an Amended Complaint on February 6, 2019.  See ECF No. 9.  The latter pleading encompassed numerous requests under FOIA and the Privacy Act that Plaintiff had submitted to the IRS.  Id. at 2–3 (requests dated August 9, 2018, August 31, 2018, September 27, 2018, and November 25, 2018); see also ECF No. 9-2 (request dated November 26, 2018).  In these requests, Powell sought tax forms concerning his family and his family's business — the Powell Printing Company.  See Am. Compl. at 2–4.

On February 27, 2019, the Court stayed the proceedings in the misguided belief that the parties might be able to resolve their disagreements outside the courtroom.  See Minute Order of Feb. 27, 2019.  This attempt met with little success, however, and the Court lifted the stay on May 2, 2019.  See Minute Order of May 2, 2019.  Some months later, the IRS answered the Amended Complaint.  See ECF No. 20.  The parties were subsequently ordered to submit briefing schedules by August 1, 2019.  See Minute Order of July 18, 2019.  Powell did not submit a schedule; instead, he filed a second Motion for Leave to File a Supplemental Complaint.  See ECF No. 21.

On September 30, 2019, this Court permitted him to supplement his Complaint with additional requests for tax records that he had submitted to the Service on January 9, 2019, January 27, 2019, and June 3, 2019.  See Powell v. IRS, No. 18-2675, 2019 WL 4750317, at *3–

5 (D.D.C. Sept. 30, 2019); see also id. at *5–6 (barring portion of Plaintiff's June 3 request on claim-preclusion grounds).  Powell, accordingly, filed his Second Amended Complaint on October 15, 2019, to include these additional requests but made no reference to any part of the June 3 request.  See ECF No. 31.

Plaintiff was not done yet: he obtained leave to submit a Third Amended Complaint about a month later, on November 18, 2019, again seeking relief under FOIA and the Privacy Act for additional records that he had requested on May 7, 2019, and June 15, 2019.  See ECF No. 34.  After answering the latest Complaint, the Service filed a Partial Motion to Dismiss, contending that several of Powell's claims are barred by issue preclusion or are moot.  See ECF No. 38 (Def. MTD) at 5–12.  The IRS also moved for partial summary judgment, arguing that Plaintiff had not exhausted his administrative remedies and that it had performed an adequate search for the remaining records.  See ECF No. 39 (Def. MSJ) at 4–19.  Briefing is now complete, and the Court may finally address all of Plaintiff's aforementioned records request.

## II.    Legal Standard

In evaluating a motion to dismiss, the Court must "treat the complaint's factual allegations as true and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'"  Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000) (quoting Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979)) (citing Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 164 (1993)).  The Court need not accept as true, however, "a legal conclusion couched as a factual allegation," nor an inference unsupported by the facts set forth in the Complaint.  Trudeau v. FTC, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

Under Federal Rule of Civil Procedure 12(b)(1), a plaintiff bears the burden of proving

that the Court has subject-matter jurisdiction to hear his claims. See Lujan v. Defs. of Wildlife,

504 U.S. 555, 561 (1992). A court also has an "affirmative obligation to ensure that it is acting

with the scope of its jurisdictional authority." Grand Lodge of Fraternal Order of Police v.

Ashcroft, 185 F. Supp. 2d 9, 13 (D.D.C. 2001). For this reason, "'the [p]laintiff's factual

allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion' than in

resolving a 12(b)(6) motion for failure to state a claim." Id. at 13–14 (quoting 5A Charles A.

Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 (2d ed. 1987) (alteration in

original)).

To survive a motion to dismiss under Rule 12(b)(6), conversely, a complaint must "state

a claim upon which relief can be granted." Although "detailed factual allegations" are not

necessary to withstand a Rule 12(b)(6) motion, Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555

(2007), "a complaint must contain sufficient factual matter, [if] accepted as true, to state a claim

to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting

Twombly, 550 U.S. at 547). Though a plaintiff may survive a Rule 12(b)(6) motion even if

"recovery is very remote and unlikely," the facts alleged in the complaint "must be enough to

raise a right to relief above the speculative level." Twombly, 550 U.S. at 555–56 (quoting

Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

Summary judgment, by contrast, may be granted if "the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(a). A genuine issue of material fact is one that would change the

outcome of the litigation. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) ("Only

disputes over facts that might affect the outcome of the suit under the governing law will

4

properly preclude the entry of summary judgment."). In the event of conflicting evidence on a material issue, the court is to construe the conflicting evidence in the light most favorable to the non-moving party. See Sample v. Bureau of Prisons, 466 F.3d 1086, 1087 (D.C. Cir. 2006). Factual assertions in the moving party's affidavits or declarations may be accepted as true unless the opposing party submits his own affidavits, declarations, or documentary evidence to the contrary. Neal v. Kelly, 963 F.2d 453, 456–57 (D.C. Cir. 1992).

"FOIA cases typically and appropriately are decided on motions for summary judgment." Defs. of Wildlife v. U.S. Border Patrol, 623 F. Supp. 2d 83, 87 (D.D.C. 2009); Bigwood v. U.S. Agency for Int'l Dev., 484 F. Supp. 2d 68, 73 (D.D.C. 2007). In FOIA cases, the agency bears the ultimate burden of proof to demonstrate the adequacy of its search and that it properly withheld any documents. See Defs. of Wildlife, 623 F. Supp. 2d at 91. The Court may grant summary judgment based solely on information provided in an agency's affidavits or declarations when they "describe the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981). Such affidavits or declarations are "accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting Ground Saucer Watch, Inc. v. CIA, 692 F.2d 770, 771 (D.C. Cir. 1981)).

### III.    Analysis

For the sake of clarity, the Court begins by setting out the requested records at issue in this suit in chronological order.  The Government has helpfully provided a list summarizing the requests, see MTD at 3–4, which the Court reproduces below with minor edits.

1. August 9, 2018

   - Amelia Powell and William A. Powell — individual specific and complete — master file transcripts using command codes MFT 30, MFT 31, and MFT 65 for tax years 1989–91 and 1993;

   - Amelia Powell and William A. Powell Non-Master File (NMF) transcripts using command codes MFT 31 and MFT 65 for tax years 1989–1991 and 1993;

   - Powell Printing Company Form 5147 under DLN17953-494-00101-1;

   - Powell Printing Company original Form 2553;

2. August 31, 2018

   - Powell Printing Company Form 5147 for Forms 1120 and 1065 for tax years 1988–91;

   - Andrew Powell, William E. Powell, William A. Powell NMF transcripts using command code MFT 30 for tax years 1987–90;

3. September 27, 2018

   - William E. Powell and William A. Powell NMF transcripts for Form 1040, with all Schedule information attached/included for tax years 1987–2006;

   - Estate of William A. Powell Examination Administration Files;

4. November 25, 2018

   - William A. Powell, William E. Powell, and Andrew Powell Examination Administration Files;

5. November 26, 2018

   - Form 813 for Powell Printing Company tax years 1987–2007; William A Powell tax years 1987–98; William E. Powell tax years 1987–2007; and Andrew Powell tax years 1987–90;

6

6. <u>January 9 and January 27, 2019</u>

- Form 706 federal estate tax returns for Andrew Powell, William A. Powell, and Amelia Powell; and

7. <u>May 7 and June 15, 2019</u>

- William A. Powell NMF transcripts for tax years 1987–2018.

As the reader will discover, the Government seeks dismissal of certain of these requests and summary judgment as to others. It largely succeeds given that a number of the documents have been produced and others have aged out of the system. The Court will separately address the two Motions, examining the assorted requests where relevant.

A. <u>Partial Motion to Dismiss</u>

In seeking partial dismissal, the IRS maintains that several of Plaintiff's claims for certain tax records are barred by collateral estoppel or are moot. <u>See</u> MTD at 5–12.

1. *Collateral Estoppel*

"Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." <u>Allen v. McCurry</u>, 449 U.S. 90, 94 (1980). In other words, "an issue of fact or law that was actually litigated and necessarily decided is conclusive in a subsequent action between the same parties or their privies." <u>Johnson v. Duncan</u>, 746 F. Supp. 2d 163, 168 (D.D.C. 2010). "If a new legal theory or factual assertion put forward in the second action is related to the subject-matter and relevant to the issues that were litigated and adjudicated previously, so that it <u>could</u> have been raised, the judgment is conclusive on it despite the fact that it was not in fact expressly pleaded or otherwise urged." <u>Yamaha Corp. of Am. v.</u>

United States, 961 F.2d 245, 257–58 (D.C. Cir. 1992) (quoting James Wm. Moore *et al.*, 1B

Moore's Federal Practice ¶ 0.443(2) at 760–61 (1988)).

Issue preclusion requires three elements: (1) "the same issue now being raised must have

been contested by the parties and submitted for judicial determination in the prior case"; (2) "the

issue must have been actually and necessarily determined by a court of competent jurisdiction in

that prior case"; and (3) "preclusion in the second case must not work a basic unfairness to the

party bound by the first determination."  Martin v. DOJ, 488 F.3d 446, 454 (D.C. Cir. 2007)

(quoting Yamaha Corp., 961 F.2d at 254).

Here, Defendant contends that Powell's requests for (1) the Powell Printing Company

Forms 2553 and 5147; (2) the NMF transcripts for himself, Andrew Powell, and William A.

Powell; and (3) the William A. Powell Form 706 were adjudicated in prior suits against the

Government.  See MTD at 5–11.  The Court agrees for the following reasons.

a.  Powell Printing Company Original Form 2553

In a prior lawsuit against the IRS, Plaintiff sought the original Form 2553 at issue here.

See Powell v. IRS, No. 14-12626, 2015 WL 5271943, at *1 (E.D. Mich. Sept. 9, 2015).  The

purpose of this form is to allow business to register as S-corporations.  After concluding that it

had jurisdiction to hear that claim, the Michigan court ordered the parties to appear before it "so

that Plaintiff could inspect and copy the original [document]."  Id.  The parties complied with

these instructions.  On September 3, 2015, in the court's presence, Plaintiff reviewed the original

form, and the IRS subsequently "provided [him] with a certified copy of [it]."  Id.  The court,

accordingly, determined that Powell had "obtained all relief he sought as to this document" and

dismissed the action with prejudice.  Id. at *1–2.

These proceedings notwithstanding, Powell makes two arguments against issue preclusion, but neither is persuasive.  To begin with, he contends that the Michigan suit was not decided by a court of competent jurisdiction.  See ECF No. 42 (Pl. Opposition) at 21.  More concretely, he says that his complaint there failed to assert a claim for relief under FOIA and thus should have been dismissed for lack of subject-matter jurisdiction.  Id.  Contrary to his position, however, the court correctly found that it had jurisdiction because he had submitted a proper request under FOIA for the record.  See Powell v. IRS, No. 14-12626, 2015 WL 4617182, at *6, 8 (E.D. Mich. July 31, 2015).  Second, Powell attempts to introduce evidence that he believes undermines the adequacy of the Service's search for the document.  See Opp. at 22.  This, too, falls flat, considering that he received exactly the relief that he sought in that suit — i.e., inspection of the original Form 2553.  See Powell, 2015 WL 5271943, at *1.

b.   Powell Printing Company Forms 5147

Plaintiff also seeks various Forms 5147 for the Powell Printing Company.  See MTD, Exh. 1 (Aug. 9, 2018, Document Request).  Form 5147 is, in essence, a paper record of changes made to tax documents over a given time period.  See ECF No. 39-10 (Declaration of Jeremy Woods), ¶ 11.  Here, Powell seeks those associated with tax forms 1065 and 1120 between 1988 and 1991.  See Aug. 9, 2018, Document Request.  These requests, however, are a subset of Powell's broader ask in an earlier suit against the IRS where he sought any Form 5147 for the Company between 1987 and 1996.  See Powell v. IRS (Powell V), No. 17-278, ECF No. 16-31 (June 14, 2017, Document Request) at 1; id., ECF No. 44-10 (Declaration of William J. White), ¶ 64.

In that action, an IRS disclosure specialist declared that "[t]o the extent they exist, Forms 5147 are kept for five years from the end of the processing year . . . before they are destroyed."

White Decl., ¶ 73.  As a result, if there was such a form for 1996, it would have been trashed in 2002.  Id..  Given that retention schedule, the IRS in an earlier case moved for summary judgment on Plaintiff's claim for the Forms 5147.  See Powell V, ECF No. 44-1 (Powell V MTD & MSJ) at 19.  Agreeing with the Government's position, this Court granted the Motion.  See Powell, 317 F. Supp. 3d at 281.

Powell nonetheless contends that his current request, which pertains to tax years from 1988 to 1991, is not barred for a couple of reasons.  To start, he points out that he seeks relief under 26 U.S.C. § 6103, not under FOIA, as in his prior suit.  See Opp. at 13.  That argument does little to advance Plaintiff's cause, however, as Section 6103 of the Internal Revenue Code does not "provide an independent basis for subject matter jurisdiction" over claims seeking the disclosure of return information.  See Maxwell v. O'Neill, No. 00-1953, 2002 WL 31367754, at *4 (D.D.C. Sept. 12, 2002), aff'd, Maxwell v. Snow, 409 F.3d 354, 357-58 (D.C. Cir. 2005).  Instead, § 6103 "operates as part of the larger FOIA framework."  Id. at *3.  To invoke the jurisdiction of a federal district court, requests for tax-return information thus must comply with the procedures set forth under FOIA, 5 U.S.C. § 552 et seq.  Id. at *4; see also Powell v. IRS, No. 16-1682, 2017 WL 2799934, at *1 (D.D.C. Jan. 24, 2017) (collecting cases).

Separately, Powell tries to introduce new evidence that he believes casts doubt on the disclosure specialist's account of the retention schedule for Forms 5147.  See Opp. at 13–14.  More specifically, he maintains that the Forms at issue would not have been destroyed before 2002.  Id.  His attempt to present this evidence after a final opinion has been rendered on the same issue, however, is exactly the kind of "piecemeal litigation" that collateral estoppel is meant to prohibit.  Morgan v. FAA, 657 F. Supp. 2d 146, 150 (D.D.C. 2009) (quoting Hardison

v. Alexander, 655 F.2d 1281, 1288 (D.C. Cir. 1981)).  It bears noting that nothing in Powell's allegations suggests that he could not have obtained this evidence at the time of the prior suit.

### c.   Non-Master File Transcripts

Plaintiff also seeks multiple NMF transcripts, including the: (1) William A. Powell NMF transcripts for Form 1040 between 1987 and 2017, as well as the NMF transcripts using command code MFT 30 between 1987 and 1990; (2) William E. Powell NMF transcripts for Form 1040 between 1987 and 2006, as well as the NMF transcripts using the MFT 30 command code between 1987 and 1990; and (3) Andrew Powell NMF transcripts using the MFT 30 command code between 1987 and 1990.  See ECF No. 9-9 (Aug. 31, 2018, Document Request); MTD, Exh. 3 (Sept. 27, 2018, Document Request); id., Exh. 7 (May 7, 2019, Document Request).

A taxpayer's master file holds all major categories of taxpayer data.  See Internal Revenue Manual § 21.2.1.2.  Some taxpayers may also have a non-master file or NMF, which contains records of "certain types of tax assessments that cannot be implemented by Master File processing."  Id., § 21.2.1.5(1); see also ECF No. 39-12 (Declaration of Delphine Thomas), ¶ 7 ("Most taxpayers do not have NMF transcripts associated with their accounts . . . .").  The specifics of NMF transcripts are unimportant here, however, because Powell's requests are clearly duplicative of those adjudicated in Powell V.  In that suit, he sought the "Official [NMF] Transcript of (1040) Series" for Andrew Powell, William A. Powell, and himself for tax years 1987–2017.  See Powell V, ECF No. 44-2 (June 10, 2017, Document Request); id., ECF No. 44-8 (Sept. 11, 2017, Document Request).  To the extent he believes the MFT 30 request alters the situation, he is mistaken.  As the Service's disclosure specialist explained, "MFT codes are numbers that indicate the type of form requested."  White Decl., ¶ 29.  Relevant here, "MFT 30

is the MFT code for a Form 1040." Id.  Putting this together, then, Powell's separate requests for the NMF transcripts for Form 1040 and the NMF transcripts using the command code MFT 30 are for the same record.

In Powell V, the IRS moved for summary judgment after it was unable to locate any responsive documents.  See Powell, 317 F. Supp. 3d at 279.  Finding the search adequate, the Court granted the Service's Motion as to William A. Powell's and William E. Powell's NMF transcripts.  Id.  It subsequently granted summary judgment as to the claim for the Andrew Powell NMF transcripts for the same reason.  See Powell v. IRS, 17-278, 2019 WL 4247246, at *5 (D.D.C. Sept. 6, 2019).

Nowhere in his Opposition does Powell expressly challenge the applicability of collateral estoppel to the request for his and Andrew Powell's NMF transcripts.  See Opp. at 9–11. Instead, he seems to call into question only the adequacy of the IRS's search for William A. Powell's transcripts.  Id.  The parties have already litigated this issue, however, and the Court sees no reason to disturb its prior ruling.  See Powell, 317 F. Supp. 3d at 279.

### d.   William A. Powell Form 706

This Court likewise has already adjudicated Plaintiff's claim for his father's Federal Estate Form 706.  See Powell, 2019 WL 4247246, at *3–5.  In that case, the IRS averred that it had been unable to locate the document.  Id. at *4.  The Court subsequently entered judgment in Defendant's favor, concluding that its search for the document was "reasonably calculated to uncover all responsive documents."  Id. at *4 (quoting Truitt v. U.S. Dep't of State, 897 F.2d 540, 542 (D.C. Cir. 1990)).

Powell, for his part, maintains once again that the IRS failed to adequately search for the Form and that preclusion is thus improper.  See Opp. at 15–16.  Each of his arguments to this end

misses the mark because it is plain that Powell could have raised them earlier.  For example, he

states that Defendant did not search the Federal Records Center using a particular Document

Locator Number.  Id.  To support his position, he attaches a FOIA response letter (dated

September 2016) that he received from the National Archives.  See ECF No. 42-8.  Yet, Powell

did not make this submission to the Court when the parties last litigated the Service's search for

the Form in 2019.  There is no reason to allow him a second bite at the apple now.

> 2.  *Mootness*

Defendant next argues that Plaintiff's requests for Amelia Powell's MF transcripts —

both specific and complete — for 1993 using the MFT 30 command code are now moot, as the

IRS turned them over to him on February 24, 2020.  See MTD at 11–12; ECF No. 38-8

(Declaration of Joycelyn Peyton), ¶ 3.  Powell agrees that he got these records but nevertheless

maintains that his request for the 1993 transcript is not moot because the IRS failed to provide

him with the transcripts for other requested years — *i.e.*, 1989, 1990, and 1991.  See Opp. at 13.

Plaintiff misunderstands the Government, which is attempting to dismiss only the 1993

transcripts on mootness grounds.  The Service addresses the transcripts for tax years 1989–91 in

its Motion for Summary Judgment, which the Court takes up below.  See *infra*, Section III.B.2.c.

Because Plaintiff concedes that the IRS provided him the records for 1993, see Opp. at 13, the

Court will dismiss that portion of Plaintiff's claim.

> B.  Partial Motion for Summary Judgment

In its other Motion, Defendant maintains that partial summary judgment is appropriate on

two grounds.  For starters, it argues that Plaintiff failed to exhaust his administrative remedies

under FOIA with respect to his requests for IRS records made on September 27 and November

25 and 26 of 2018.  See MSJ at 5–7.  Further, the Service believes that it conducted an adequate

search and did not locate any records responsive to these requests and others made in 2018 (August 9) and 2019 (January 9 and 27, May 7, and June 15). Id. at 2–3, 7–19. The Court will address each of these points in turn.

### 1. *Exhaustion*

Before filing suit in federal court, a FOIA requester must exhaust her administrative remedies. See Citizens for Responsibility & Ethics in Washington v. FEC (CREW), 711 F.3d 180, 182–83 (D.C. Cir. 2013); Oglesby v. U.S. Dep't of Army, 920 F.2d 57, 61–62 (D.C. Cir. 1990). Exhaustion is required so that "the agency has an opportunity to exercise its discretion and expertise on the matter and to make a factual record to support its decision." Oglesby, 920 F.2d at 61. Allowing requesters to bypass administrative remedies "undercut[s] 'the purposes of exhaustion, namely, preventing premature interference with agency processes, . . . afford[ing] the parties and the courts the benefit of [the agency's] experience and expertise, . . . [or] compil[ing] a record which is adequate for judicial review.'" Hidalgo v. FBI, 344 F.3d 1256, 1259 (D.C. Cir. 2003) (quoting Ryan v. Bentsen, 12 F.3d 245, 247 (D.C. Cir. 1993)).

If, however, an agency "does not adhere to certain statutory timelines in responding to a FOIA request," the requester is "deemed by statute" to have satisfied his obligation to exhaust and is thus permitted to bypass administrative-appeal remedies. CREW, 711 F.3d at 182. The relevant statutory time period is straightforward: FOIA requires the agency to "determine within 20 days (excepting Saturdays, Sundays, and legal public holidays) after the receipt of any such request whether to comply with such request and . . . immediately notify the person making such request of such determination and the reason therefor, [and of] the right of such person to appeal to the head of the agency . . . [any] adverse determination." 5 U.S.C. § 552(a)(6)(A)(i).

In most exhaustion cases, then, courts will perform a calculation of days to determine if agencies have sufficiently complied with these statutory deadlines to trigger the exhaustion requirement. "[I]f the agency has not [timely] issued its 'determination[,]' . . . the requester may bring suit directly in federal district court without exhausting administrative appeal remedies." CREW, 711 F.3d at 182. He may not do so, however, if the agency has responded in a timely manner and the requester has simply opted out of the administrative-appeal process. See Porter v. CIA, 778 F. Supp. 2d 60, 68 (D.D.C. 2011).

With this background in mind, the Court now turns to the specific requests at issue here. On September 27, 2018, Plaintiff sought the Examination Files for the Estate of William A. Powell for tax years 1992–94. See Sept. 27, 2018, Document Request. The IRS searched for the files but was unable to locate any responsive documents. See ECF No. 39-12 (Declaration of Delphine Thomas), ¶¶ 14–26. So the Service responded to Powell's request on October 23, 2018, satisfying the 20-day statutory deadline. Id., ¶ 25; see ECF No. 40-3 (Oct. 23, 2018, IRS Response). Yet Plaintiff did not appeal this response and thus failed to exhaust his administrative remedies before filing suit here. See ECF No. 39-11 (Declaration of Patricia Perez), ¶¶ 7–8. For this reason, Defendant maintains that judicial review of his claim is barred. See MSJ at 6.

According to the IRS, Powell's November 25, 2018, request runs into similar problems. Id. There, he sought the Examination Files for himself, William A. Powell, and Andrew Powell. See MTD, Exh. 4 (Nov. 25, 2018, Document Request). After conducting a search that came up empty, the Service sent a response to Plaintiff on December 20, 2018, once again complying with FOIA's timeline. See Thomas Decl., ¶ 39; ECF Nos. 40-5–7 (Dec. 20, 2018, IRS Responses). Powell, however, did not appeal this IRS response either. See Perez Decl., ¶¶ 7–8.

In his Opposition, Plaintiff contends that Defendant has not provided sufficient evidence that it sent those responses to him, and that, in any event, he never received them. See Opp. at 5–7, 13. The Court can make quick work of these arguments. That is because, "in FOIA cases, courts generally accord government records and official conduct a presumption of legitimacy." Pinson v. DOJ, 177 F. Supp. 3d 56, 74 (D.D.C. 2016) (citing U.S. Dep't of State v. Ray, 502 U.S. 164, 179 (1991)). Here, the IRS has provided a detailed declaration from one of its specialists, who explained that she received these requests, searched for responsive documents, and responded by letter on specific dates. See generally Thomas Decl. The Government also submitted copies of the letters sent to Plaintiff. See Oct. 23, 2018, IRS Response; Dec. 20, 2018, IRS Responses. Powell cannot rely solely on bare assertions to create an issue of material fact. Cf. Jones v. DOJ, 576 F. Supp. 2d 64, 67 (D.D.C. 2008) (denying agency's motion to dismiss when plaintiff submitted verified complaint and subsequent declaration stating that he never received agency's response). As such, the IRS is entitled to summary judgment as to the requests submitted on September 27 and November 25, 2018.

Plaintiff has better luck on the exhaustion front with his request of November 26, 2018, where he sought a number of Forms 813. See ECF No. 9-19 (Nov. 26, 2018, Document Request). Here, too, Defendant's search yielded no responsive documents. See Thomas Decl., ¶ 6. But this time the Service did not notify Powell of its decision within the mandated timeframe, sending a response on March 29, 2019. See ECF No. 40-8 (Mar. 29, 2019, IRS Response). Plaintiff, therefore, had satisfied the exhaustion requirement when he filed his Amended Complaint in February 2019. The Court will thus deny the Motion as to this request on exhaustion grounds. As will soon become plain, Powell's victory is short lived because the Service's search for these records was nonetheless adequate.

### 2. *Adequacy of Search*

In moving for partial summary judgment, the IRS also maintains that it conducted an adequate search.  "An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" Valencia–Lucena v. U.S. Coast Guard, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting Truitt, 897 F.2d at 542); see Steinberg v. DOJ, 23 F.3d 548, 551 (D.C. Cir. 1994).  "[T]he issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate."  Weisberg v. DOJ, 745 F.2d 1476, 1485 (D.C. Cir. 1984).

The adequacy of an agency's search for documents requested under FOIA "is judged by a standard of reasonableness and depends, not surprisingly, upon the facts of each case."  Id.  To meet its burden, the agency may submit affidavits or declarations that explain the scope and method of its search "in reasonable detail."  Perry, 684 F.2d at 127.  The affidavits or declarations should "set[] forth the search terms and the type of search performed, and aver[] that all files likely to contain responsive materials (if such records exist) were searched."  Oglesby, 920 F.2d at 68.  Absent contrary evidence, such affidavits or declarations are sufficient to show that an agency complied with FOIA.  See Perry, 684 F.2d at 127.  "If, however, the record leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper."  Truitt, 897 F.2d at 542.

One final point bears mention.  For purposes of this inquiry, it makes no difference whether Powell requested the various documents under FOIA or the Privacy Act.  Indeed, our Circuit has held that the adequacy of the search for both FOIA and Privacy Act requests is

analyzed under the same standard.  See Chambers v. U.S. Dep't of Interior, 568 F.3d 998, 1003 (D.C. Cir. 2009).

The IRS supported its Motion here with the Declarations of Delphine Thomas (an IRS Senior Disclosure Specialist) and Jeremy Woods (an IRS Disclosure Analyst).  See Thomas Decl.; ECF No. 39-10 (Declaration of Jeremy Woods).  Based on these affidavits, Defendant contends that it has fulfilled its duty to perform an adequate search.  The Court considers each record type in turn.

a.  Forms 706

Powell requested the Federal Estate Forms 706 for Andrew Powell and Amelia Powell. See MTD, Exh. 6 (Jan. 9 & Jan 27, 2019, Document Requests).  In response, the IRS searched for these documents in the Information Data Retrieval System (IDRS), an application that "store[s] much of the data associated with tax payer accounts."  Thomas Decl., ¶ 18.  Starting with Andrew Powell, Thomas used the IRDS command code INOLES, which displays master file data and can be used to verify whether "the social security number provided in the request corresponds to the correct taxpayer."  Id., ¶ 9.  But the SSN that Plaintiff provided for Andrew Powell did not yield any results — that is, there was no account on a master file for that number. Id., ¶ 71.  So Thomas ran another search using command code INOLES, this time including "V" and "W" at the end of the SSN.  Id., ¶ 72 (Adding the "V" to the search allows a disclosure specialist to search for the estate information of a taxpayer; conversely, the "W" is used to indicate a deceased taxpayer.  Id., ¶ 16.)  Those attempts did not bear any fruit either.  Id., ¶ 72. Thomas then repeated these steps when she searched for the Amelia Powell Form 706, but again came up empty.  She avers that "[t]here is no other IRS system in which the requested records might be located."  Id., ¶ 74.

Powell, who maintains that he located two pages of a Form 706 for Andrew Powell, is unconvinced.  See Opp. at 15; ECF No. 42-7 (Andrew Powell Form 706).  According to Plaintiff, the FOIA Officer at the National Archives and Records Administration provided him with this abridged copy, which is stored at the Federal Records Center.  See ECF No. 57-1 (Pl. Sur-Reply) at 5–6.  That Powell successfully found these two pages based on a request to a different agency, however, does not move the needle here.  See Barouch v. DOJ, 962 F. Supp. 2d 30, 53 (D.D.C. 2013).  Even if the document is still stored in the FRC, the IRS avers that it has no way of searching for it as no master file information on Andrew Powell exists.  See ECF No. 47-1 (Supplemental Declaration of Delphine Thomas), ¶¶ 10, 13–14.  Defendant did not find the Document Locator Number necessary to submit a request to the FRC.  Id., ¶ 14.  The Court is satisfied that the Service's search was adequate.

### b.  Non-Master File Transcripts

Powell also sought: (1) William A. Powell NMF transcripts for Form 1040 between 1987 and 2018; and (2) William A. Powell and Amelia Powell NMF transcripts using command codes MFT 31 and MFT 65 for 1989–91 and 1993.  See MTD, Exh. 1 (Aug. 9, 2018, Document Request); id., Exh. 7 (May 7 and June 15, 2019, Document Requests).

The IRS houses NMF files in the Automated Non-Master File (ANMF) System, a search of which can determine whether an NMF file exists for a given taxpayer.  See Internal Revenue Manual § 21.7.12.2.  Because Thomas does not have direct access to this system, she must submit a request to an ANMF specialist, who will search the database.  See Thomas Decl., ¶ 7. She can nevertheless conduct searches in IDRS to determine if an NMF transcript exists and, in doing so, assist the ANMF specialist in "performing a complete and accurate search."  Id.

For William A. Powell's NMF Transcripts for Form 1040, she contacted the ANMF specialist, who, in turn, searched "archived, open, and closed records" for the social security number that Plaintiff provided.  Id., ¶ 88.  That search did not turn up any records.  Id.  As for the other NMF transcripts, Thomas focused her search on IDRS.  Specifically, she used the command code INOLES and placed an "N" at the end of Amelia Powell and William A. Powell's social security numbers.  Id., ¶ 82.  Doing so allowed her to determine if an NMF transcript exists for a taxpayer.  Id.  She did not get any responsive results.  Id.

Powell takes issue with the adequacy of this search, and, more specifically, with Thomas's description of the ANMF search process.  See Opp. at 11.  In particular, he contends that the Government should have identified the ANMF specialist who actually searched the system, described in detail how that specialist performed the search, and explained how the specialist concluded that there were no records.  Id.  But FOIA does not require this level of detail.  See Dillon v. DOJ, 102 F. Supp. 3d 272, 282 (D.D.C. 2015) (requiring that "declarations explain in reasonable detail the scope and method of the search") (emphasis added); Dugan v. DOJ, 82 F. Supp. 3d 485, 496 (D.D.C. 2015) (stating that "agency's declarant need not have participated directly in the actual processing of a FOIA request" so long as she has "personal knowledge of the procedures used in handling" request).  Based on Thomas's Declaration, it is clear that she is knowledgeable of the ANMF process, see Thomas Decl., ¶¶ 7, 10; see also Powell V, ECF No. 78-5 (Thomas's NMF Declaration), ¶¶ 18–21 (describing ANMF searches), and that the IRS's search was reasonably tailored to produce all relevant NMF transcripts.

c.   Master File Transcripts

Plaintiff also requested the William A. Powell and Amelia Powell MF transcripts — both specific and complete — for tax years 1989–91 and 1993 using command codes MFT 30, MFT

31, and MFT 65.  See Aug. 9, 2018, Document Request.  As discussed above, the IRS has

already released Amelia Powell's MF transcripts using command code MFT 30 for 1993.  See

*supra*, Section III.A.2.

As for the remaining MF transcripts, Thomas first input William A. Powell's and Amelia

Powell's social security numbers into IRDS.  See Thomas Decl., ¶¶ 77–78.  She then used a

number of command codes to conduct a comprehensive search for any master-file activity.  Id.,

¶¶ 78–81; see also, e.g., id., ¶ 33 (IMFOLV search can locate activity that has been "aged out of

the master file system, and therefore unavailable, using other search parameters"); id., ¶ 9

(IMFOLT search can identify other command codes that "may produce more information for a

taxpayer relating to" posted transactions); id., ¶ 81 (INOLEX search can locate additional

information about taxpayer by cross-referencing that data with information retrieved using other

codes).  She did not find any responsive records for either William A. Powell or Amelia Powell.

Id., ¶¶ 79, 81.  Powell's rejoinder to this is addressed and rejected below, following the asterisks.

The Service's search efforts here more than suffice.

d.   Examination Files

As the reader knows, Powell also requested the Examination files for himself, William A.

Powell, Andrew Powell, and the Estate of William A. Powell.  See Sept. 27, 2018, Document

Request; Nov. 25, 2018, Document Request.  The Court has already determined that Powell did

not exhaust his administrative remedies with respect to these records.  See *supra*, Section III.B.1.

To forestall an inevitable future suit, it will nevertheless set out why summary judgment is also

appropriate on adequacy-of-search grounds.

Thomas input the Employer Identification Number and social security numbers that

Plaintiff provided for the relevant taxpayers.  See, e.g., Thomas Decl., ¶¶ 15, 34.  She then

searched the database using several command codes.  See, e.g., id., ¶ 15 (BMFOLI command code displays all tax-module information); id., ¶¶ 18–19 (BMFOLT search can indicate whether examination took place); id., ¶¶ 20–22 (SUMRY, ENMOD, and AMDIS command codes can locate information that would not appear in BMFOLT search); id., ¶ 9 (IMFOLI search provides additional information for individual taxpayers); see also id., ¶¶ 30, 32–38 (detailing search sequence).

Thomas did not uncover any responsive records for William E. Powell, William A. Powell, or Andrew Powell.  Id., ¶¶ 30, 32–38.  Her BMFOLT search, however, did display some information that could indicate the existence of an Examination file associated with the Estate of William A. Powell.  Id., ¶¶ 18–19.  Upon finding this potential lead, Thomas followed up with the IRS's Examination Division, which would have more information on this type of record if it in fact existed.  Id., ¶ 19.  The Examination Division, however, ultimately determined that no such record existed.  Id.  Thomas's additional searches in IDRS, moreover, were unsuccessful. Id., ¶¶ 20–24.

Perhaps realizing the breadth of the Service's search, Powell does not challenge the particular command codes that Thomas employed in her efforts to locate the Examination files. See Opp. at 6–7.  Rather, he believes that she should have looked at additional databases for these records.  Id.  As the Court will discuss shortly, however, those databases would not reasonably have yielded any responsive records either.  The Government has easily met its burden here.

e.  Forms 813

As chronicled above, Plaintiff also sought a slew of Forms 813 for multiple tax years. See Nov. 26, 2018, Document Request (Powell Printing Company (1987–1997); William A.

22

Powell (1987–98); William E. Powell (1987–2007); and Andrew Powell (1987–90)).  Although he exhausted his administrative remedies for this request, see supra, Section III.B.1, the Government once again performed an adequate search and is entitled to summary judgment.

Thomas has laid out a detailed account of her searches for these forms.  See Thomas Decl., ¶¶ 41–65.  Broadly speaking, the Form 813 is an "internal IRS document" that lists "payment transactions" for taxpayers.  Id., ¶ 42.  For many years, the Service stored these documents in paper form.  Id., ¶ 47.  In 2003, however, the Government implemented a database that "retain[ed] electronic copies of the Form 813."  Id.  The Service retains duplicates of these forms for varying lengths, depending on whether a payment transaction is associated with a master file (typically 6 years) or a non-master file (30 years).  Id., 48–49.  Certain transaction codes associated with a master file, however, could extend the retention period beyond 6 years.  Id., ¶ 54 & n.8.

Thomas began her search looking for associated non-master file transcripts.  Id., ¶ 52; see also id., ¶¶ 48–49 (noting that some Forms 813 are associated with NMF payments).  After conducting a preliminary search on IDRS, she asked a specialist to examine the ANMF database.  Id., ¶¶ 52–53.  Neither one of them identified any responsive records.  Id.  She then turned her attention to master-file payment transactions, conducting a comprehensive search in IDRS.  Id., ¶ 52; see also id., ¶ 57 (using, inter alia, command codes INOLES, BMFOLI, and BMFOLT).  Unfortunately for Plaintiff, these efforts did not yield any responsive documents.  Id., ¶¶ 58, 60, 64–65.

To undermine the adequacy of Thomas's search, Plaintiff points to a Standard Form 135 that he received from another agency in response to a FOIA request.  See Opp. at 18; see also ECF No. 42-2 (NARA FRC Record (813)).  The face of this document shows that certain Forms

813 are retained until 2069.  Id.  But this finding does not "leav[e] substantial doubt as to the

sufficiency of the search" conducted here.  Truitt, 897 F.2d at 542.  To be sure, certain

transaction codes do extend the retention period of a particular Form 813 beyond the standard 6-

year mark.  See Thomas Decl., ¶ 54.  None of the transaction codes that Thomas uncovered

during her wide-ranging search, however, extended the retention period until 2069.  Id., ¶¶ 59,

63–65.

Powell also takes issue with some of the command codes that Thomas employed.  See

Opp. at 18–19.  For example, he argues that she should not have used the command code

INOLES because such code generates information related only to master files, whereas Forms

813 relate only to non-master file information.  Id.  Contrary to Plaintiff's position, however, a

Form 813 can have a payment transaction associated with either type of file.  See Thomas Decl.,

¶¶ 48–49.  The Court, then, is satisfied with the adequacy of this search.

*       *       *

Throughout his Opposition papers, Powell contends that the IRS should have searched

for all these documents in additional databases — e.g., the AIMS, ADP, ANMF, and Federal

Records Center.  See Opp. at 6–7, 10, 12–15, 17, 19, 21.  The Court is unpersuaded.

To start off, Thomas did not perform an independent search of the AIMS and ADP

systems because the information stored there could be accessed through IDRS — the database

upon which she relied on to conduct her searches.  See Thomas Suppl. Decl., ¶ 6 ("Since any

information that would have been electronically processed through ADP is available on IDRS,

my search on IDRS would locate any of the relevant information."); id. ¶ 7 ("The AIMS system

is accessible through IDRS.  Therefore, I do not need to access a separate database from IDRS to

locate information stored in AIMS.").  The Court will not require her to perform repetitive searches.

The ANMF system, moreover, only stores information not contained in a master file.  Put otherwise, "only document requests seeking non-master file documents would require a search of the ANMF."  Id., ¶ 8.  As such, there was no need for Thomas to reach out to an ANMF specialist for any records other than the William A. Powell and Amelia Powell NMF transcripts, as well as a subset of the Forms 813.

Finally, Thomas explained that she cannot request documents from the FRC unless she has identified a particular Document Locator Number, which "appear[s] on a taxpayer's master file."  Id., ¶¶ 8–9.  Here, several of the records she looked for did not produce a master file — e.g., the Examination files, several master file transcripts, and a number of Forms 813.  Id., ¶¶ 9– 14.  Thomas, accordingly, could not have submitted a request to the FRC for these records.

### f.   Form 5147

Powell also requested the Form 5147 for the Powell Printing Company under Document Locator Number 17953-494-00101-1.  See Aug. 9, 2018, Document Request.  To search the database for this type of document, Disclosure Specialist Woods first uses the BMFOLI command code to determine if there is any information, including "tax modules," "associated with a specific taxpayer."  Woods Decl., ¶ 14.  If he uncovers any such information, he then employs the BMFOLT command code to obtain a "transcript of transactions on a tax module." Id.  Woods can subsequently review this transcript to identify any "transaction codes" that indicate the existence of a Form 5147.  Id.

After carrying out this search, he identified only two years — 1992 and 1993 — when there was activity associated with the Powell Printing Company.  Id., ¶ 15.  Woods, however,

says that any Forms 5147 — if they ever existed for these years — would have been purged long ago.  Id., ¶¶ 11, 15.  That is because such forms are retained only for five years.  Id., ¶ 11.

In rejoinder, Powell argues that a SF-135 that he received from the National Archive Federal Records Center calls into question this five-year retention schedule.  See Opp. at 13–14.  According to the SF-135 that he received, a Form 5147 is not scheduled to be disposed of until January 2076.  Id. at 13; see also ECF No. 42-6 (NARA FRC Record (5147)).  In its Reply brief, Defendant responds that this "exhibit is undated" and that "there is no way of knowing" if there was a change in the retention schedule.  See ECF No. 47 (Def. Reply) at 9.

The Court is ultimately unconvinced that the Service has adequately searched for the document.  In her Supplemental Declaration, Thomas notes that, although an analyst "personally do[es] not have access" to the Federal Records Center, she can submit a request for documents stored there.  See Thomas Suppl. Decl., ¶ 8.  To do so, she merely needs to provide a specific Document Locator Number.  Id.  Yet nowhere does Woods — the analyst who searched for the Form 5147 — tell the Court why he did not use the DLN that Powell provided him to make a request from the FRC.  He also did not aver that "all files likely to contain responsive materials . . . were searched."  Oglesby, 920 F.2d at 68.  The Court is, accordingly, unable to grant the Government summary judgment on this request.

The IRS shall conduct a further search via the FRC or explain in a subsequent motion why it is unable to do so.

## IV.   Conclusion

The Court, accordingly, will grant Defendant's Partial Motion to Dismiss and will grant in part and deny in part its Partial Motion for Summary Judgment.  A separate Order so stating will issue this day.

/s/ James E. Boasberg
JAMES E. BOASBERG
United States District Judge

Date:  July 2, 2020