UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WILLIAM E. POWELL,<br><br>    Plaintiff,<br><br>    v.<br><br>INTERNAL REVENUE SERVICE,<br><br>    Defendant. | Civil Action No. 18-2675 (JEB) |

## MEMORANDUM OPINION

In its latest Opinion in this case, this Court granted Defendant Internal Revenue Service's Partial Motion to Dismiss and granted in part its Partial Motion for Summary Judgment, foreclosing many of *pro se* Plaintiff William E. Powell's claims for certain tax records under the Freedom of Information Act. See Powell v. IRS, No. 18-2675, 2020 WL 3605774 (D.D.C. July 2, 2020). Plaintiff now moves for partial reconsideration with respect to four of those claims. He first argues that two should not have been dismissed on collateral-estoppel grounds. He also contends that Defendant failed to meet its summary-judgment burden of proving that it had performed an adequate search for certain other documents. Because the Court ultimately finds Powell's arguments unavailing, it will deny the Motion.

**I.    Background**

Plaintiff has engaged in long-running FOIA litigation to locate various tax records relating to his family's printing business. Because the Court's most recent Opinion on the matter sets out the history of these efforts, see Powell, 2020 WL 3605774, at *1–2, it will briefly discuss only those claims relevant to the present Motion.

1

Powell initially filed this action under FOIA and the Privacy Act on October 29, 2018, seeking from the IRS various tax records regarding family members and his family's business, the Powell Printing Company. See ECF No. 1 (Complaint). He has since amended or supplemented his original Complaint three times with additional requests for tax records submitted to the IRS. See ECF Nos. 9, 31, 34. In its latest Opinion, the Court granted Defendant's Partial Motion to Dismiss claims relating to certain requests and Partial Motion for Summary Judgment with respect to others. Powell, 2020 WL 3605774, at *5–6, 9, 11.

Powell now seeks reconsideration of the Court's Opinion with respect to the following four records requests: (1) various non-master file transcripts for William A. Powell, William E. Powell, and Andrew Powell; (2) William A. Powell's Form 706; (3) Andrew Powell's Form 706; and (4) the Powell Printing Company's Forms 813. See ECF No. 61 (Pl. Mot. to Recon.). For those not fully versed in IRS procedure, a Form 706 estate-tax return is a "one-time submission [filed] by the executor to determine the contents of an estate." Powell v. IRS (Powell V), No. 17-278, 2019 WL 4247246, at *3 (D.D.C. Sept. 6, 2019). A taxpayer's non-master file (NMF) contains information regarding "certain types of tax assessments that cannot be implemented by [processing the Master File]," I.R.S. IRM 21.2.1.5(1), Non-Master File (Apr. 12, 2011), which primarily holds all major categories of taxpayer data. Id. IRM 21.2.1.2, Master File (Oct. 1, 2011); see also ECF No. 39-12 (Declaration of Delphine Thomas), ¶ 7 ("Most taxpayers do not have NMF transcripts associated with their accounts . . . ."). Finally, Form 813 is "an 'internal IRS document' that lists 'payment transactions' for taxpayers." Powell, 2020 WL 3605774, at *11 (quoting Thomas Decl., ¶ 42).

## II.     Legal Standard

Because Plaintiff seeks reconsideration of an interlocutory order granting in part Defendant's dispositive motions, Federal Rule of Civil Procedure 54(b) governs the Court's analysis.  "The standard of review for interlocutory decisions differs from the standards applied to final judgments under Federal Rules of Civil Procedure 59(e) and 60(b)."  Williams v. Savage, 569 F. Supp. 2d 99, 108 (D.D.C. 2008).  Plaintiff has a lower bar to clear, as "reconsideration of an interlocutory decision is available under the standard 'as justice requires.'"  Judicial Watch v. Dep't of Army, 466 F. Supp. 2d 112, 123 (D.D.C. 2006) (quoting Childers v. Slater, 197 F.R.D. 185, 190 (D.D.C. 2000)); accord Lemmons v. Georgetown Univ. Hosp., 241 F.R.D. 15, 21–23 (D.D.C. 2007).

The "as justice requires" standard may be met where, for example, the court has patently misunderstood the parties, strayed far afield from the issues presented, or failed to consider a controlling or significant change in the law or facts since the submission of the issue.  See Cobell v. Norton, 224 F.R.D. 266, 272 (D.D.C. 2004).  "These considerations leave a great deal of room for the court's decision and, accordingly, the 'as justice requires' standard amounts to determining 'whether [relief upon] reconsideration is necessary under the relevant circumstances.'"  Lewis v. District of Columbia, 736 F. Supp. 2d 98, 102 (D.D.C. 2010) (quoting Cobell, 224 F.R.D. at 272).  The court's discretion under Rule 54(b), however, is "subject to the caveat that where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again."  Singh v. George Washington Univ., 383 F. Supp. 2d 99, 101 (D.D.C. 2005) (internal citations and quotation marks omitted).  "Ultimately, the moving party has the burden to demonstrate 'that reconsideration is appropriate and that harm or injustice would result if reconsideration were denied.'"  United States v. All

Assets Held at Bank Julius, Baer & Co., Ltd., 315 F. Supp. 3d 90, 97 (D.D.C. 2018) (quoting FBME Bank Ltd. v. Mnuchin, 249 F. Supp. 3d 215, 222 (D.D.C. 2017)).

**III.   Analysis**

The Court addresses each of Plaintiff's four sets of records requests, turning first to the two claims dismissed on collateral-estoppel grounds, then examining the two on which the Court granted summary judgment for Defendant.

   A.   Requests Subject to Dismissal

In seeking reconsideration, Plaintiff contends that his claims relating to various family members' non-master file transcripts and for his father William A. Powell's Form 706 federal-estate-tax return should not have been dismissed on collateral-estoppel grounds.

"Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." Allen v. McCurry, 449 U.S. 90, 94 (1980).  In other words, "an issue of fact or law that was actually litigated and necessarily decided is conclusive in a subsequent action between the same parties or their privies." Johnson v. Duncan, 746 F. Supp. 2d 163, 168 (D.D.C. 2010).  When the determination of that factual or legal issue "is essential to the judgment, [it] is conclusive in a subsequent action between the parties, whether on the same or a different claim." Consol. Edison Co. of N.Y. v. Bodman, 449 F.3d 1254, 1258 (D.C. Cir. 2006) (internal citation omitted).

For collateral estoppel — also known as issue preclusion — to apply, (1) "the same issue now being raised must have been contested by the parties and submitted for judicial determination in the prior case"; (2) "the issue must have been actually and necessarily determined by a court of competent jurisdiction in that prior case"; and (3) "preclusion in the

4

second case must not work a basic unfairness to the party bound by the first determination."
Martin v. Dep't of Justice, 488 F.3d 446, 454 (D.C. Cir. 2007) (quoting Yamaha Corp. of Am. v.
United States, 961 F.2d 245, 254 (D.C. Cir. 1992)).

      1. *Non-Master File Transcripts*

The Court begins with the NMF transcripts for William A. Powell, William E. Powell, and Andrew Powell for various tax years. Powell does not dispute that he seeks the same documents previously adjudicated in prior suits, but instead argues that preclusion is improper because, whereas his past claims were brought under FOIA, his current claims are based on requests made pursuant to separate statutes and procedures. Specifically, Plaintiff contends that he submitted the NMF-transcript requests at issue here under 26 U.S.C. § 6103. See Pl. Mot. to Recon. at 9–12. He relatedly suggests that he requested these NMF-transcript records through a "non-FOIA process," and, as a result, they should not have been barred by collateral estoppel. Id. at 10–12.

Plaintiff's arguments, which he also raised in various places throughout his prior Opposition, confuse the relationship between FOIA and Section 6103. As this Court most recently explained, Section 6103 "does not 'provide an independent basis for subject matter jurisdiction' over claims seeking the disclosure of return information." Powell, 2020 WL 3605774, at *5 (quoting Maxwell v. O'Neill, No. 00-1953, 2002 WL 31367754, at *4 (D.D.C. Sept. 12, 2002), aff'd, Maxwell v. Snow, 409 F.3d 354, 357–58 (D.C. Cir. 2005)). Instead, Section 6103 sets out the IRS's disclosure duties and exemptions for tax returns, "allow[ing] the IRS to disclose certain tax records . . . which records, in turn, are subject to FOIA." Elec. Privacy Info. Ctr. v. IRS, 910 F.3d 1232, 1237 (D.C. Cir. 2018) (emphasis added). Thus, "§ 6103 'operates as part of the larger FOIA framework'" and does not provide plaintiffs with a

separate cause of action.  See Powell, 2020 WL 3605774, at *5 (quoting Maxwell, 2002 WL 31367754, at *3).

Similarly, the fact that Powell originally submitted his records requests through a "non-FOIA procedure" does not mean that they remain outside of FOIA's framework.  Plaintiff is correct that IRS regulations set out routine "non-FOIA" procedures for parties seeking certain tax-return and tax-transcript information, which direct them to submit requests via Form 4506 to the IRS's Return and Income Verification Systems (RAIVS) unit.  Goldstein v. IRS, 174 F. Supp. 3d 38, 48 (D.D.C. 2016).  In processing these requests, RAIVS must comply with the disclosure requirements of Section 6103.  Id.  But a party dissatisfied with the Service's response to its RAIVS requests must then follow the Service's specified FOIA procedures, see Powell v. IRS, No. 18-453, 2019 WL 1980973, at *3 (D.D.C. May 3, 2019), and the Service's responses to these requests are ultimately subject to judicial review under FOIA.  See Goldstein, 174 F. Supp. 3d at 47  ("[E]ven though the IRS has established a separate 'non-FOIA' process for requesting tax returns, . . . the IRS must defend [its disclosure decisions] under the procedural and substantive rules of FOIA.").  Indeed, "[t]o invoke the jurisdiction of a federal district court [in the first place], requests for tax-return information . . . must comply with the procedures set forth under FOIA."  Powell, 2020 WL 3605774, at *5.  Therefore, even if Powell had originally utilized the "non-FOIA" RAIVS process to make his requests, his claims challenging the IRS's failure to fulfill those requests are correctly construed as causes of action under FOIA.

As a result, FOIA governs Plaintiff's present requests for the NMF-transcript documents, which are the same records he sought under the same statute in one of his prior suits.  For this reason, the Court properly held that the doctrine of collateral estoppel precludes him from relitigating his claims here.  As the Court found, and Plaintiff does not contend otherwise, his

NMF-transcript requests in this case "are clearly duplicative of those adjudicated in Powell V." Powell, 2020 WL 3605774, at *5 (concluding that Plaintiff's 2017 requests for NMF transcripts for Form 1040 and his current requests for NMF transcripts using the command code MFT 30 "are for the same record"). In that suit, the Court granted summary judgment for Defendant as to William A. Powell's and William E. Powell's NMF transcripts, Powell v. IRS, 317 F. Supp. 3d 266, 279 (D.D.C. 2018), and Andrew Powell's NMF transcript. Powell, 2019 WL 4247246, at *5.

Finally, Plaintiff's Motion suggests that the Court failed to address new evidence that was unavailable in prior litigation — namely, a handwritten "NMF" under William A. Powell's name apparently made by Defendant in response to a separate request submitted in August 2018, see Pl. Mot. to Recon. at 11 (citing ECF No. 42-3) — thus rendering preclusion inappropriate as to those transcripts. Even if this evidence warranted turning to the underlying merits of Defendant's search, it falls well short of upending the Court's finding on the adequacy of the IRS's previous efforts. Powell, 317 F. Supp. 3d at 279.

2. *William A. Powell's Form 706*

Next up is Plaintiff's request for William A. Powell's Form 706. Here, Powell asserts that preclusion is inappropriate because he "never stated a claim" for William A. Powell's Form 706 in any of his previous suits. See Pl. Mot. to Recon. at 3, 5–6, 8. Instead, the Court previously required Defendant to search for Form 706 only because that form was relevant in determining the adequacy of the Service's search for a separate record (a Form K-1), which may have been attached to Form 706. Powell, 317 F. Supp. 3d at 280–81; see also Powell, 2019 WL 4247246, at *1.

Powell's contention that he has never sought relief for this Form 706 in his prior FOIA litigation misunderstands the difference between claim preclusion and issue preclusion. "Claim preclusion 'forecloses successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit.'" Proctor v. District of Columbia, 74 F. Supp. 3d 436, 450 (D.D.C. 2014) (quoting Taylor v. Sturgell, 553 U.S. 880, 892 (2008)). Issue preclusion, by contrast, "prevents the relitigation of any issue that was raised and decided in a prior action." Alford v. Providence Hosp., 60 F. Supp. 3d 118, 124 (D.D.C. 2014) (internal quotation marks and citations omitted). Thus, "issue preclusion may conclusively establish facts such that the plaintiff's [subsequent] claim must fail as a matter of law." Proctor, 74 F. Supp. 3d at 454.

Applying the three elements of issue preclusion, this Court directly decided the same issue — namely, whether Defendant conducted an adequate search for William A. Powell's Form 706 — when it decided the adequacy of the Service's search for his Form K-1 in a prior suit between the same parties. See Powell, 2019 WL 4247246, at *3–5. Finding that the "IRS's updated explanation shows that its search for the Form 706 was adequate," id. at *4, the Court concluded that the search for the requested K-1 information was "reasonably calculated to uncover all responsive documents" and therefore entered summary judgment for Defendant on that claim. Id. (quoting Truitt v. Dep't of State, 897 F.2d 540, 542 (D.C. Cir. 1990)). Because a "final outcome" in that suit — that is, the adequacy of the Form K-1 search — "hinge[d]" on the adequacy of the Form 706 search, the Form 706 issue was "actually and necessarily determined" by the Court in a prior proceeding. Proctor, 74 F. Supp. 3d at 453 (first quoting Bobby v. Bies, 556 U.S. 825, 835 (2009), then quoting Martin, 488 F.3d at 454).

Finally, applying issue preclusion in this case does not work a "basic unfairness" against Plaintiff. Id. at 450-51 (quoting Martin, 488 F.3d at 454). As the Court observed in its Opinion, Powell's arguments against preclusion in his Opposition papers, which focus on the adequacy of the IRS's search, "miss[] the mark" because he could have raised them when the parties previously litigated the Service's search for the Form. Powell, 2020 WL 3605774, at *6. His only newly asserted evidence is a June 9, 2020, email received from Wanda Williams, a FOIA Archivist at the National Archives and Records Administration, attaching a Standard Form 135 that purportedly confirms the existence of a Form 706 for William A. Powell at a specific Document Location Number (DLN). See Pl. Mot. to Recon. at 6–8 (citing ECF Nos. 57-1 (Pl. Sur-reply) at 5–6; 57-4). Although such evidence was unavailable in 2019 when the Court decided the Form 706 search in Powell V, it does not suggest that Plaintiff was denied "a fair opportunity procedurally, substantively, and evidentially to pursue his claim the first time." Canonsburg Gen. Hosp. v. Sebelius, 989 F. Supp. 2d 8, 17 (D.D.C. 2013) (quoting Blonder–Tongue Labs., Inc. v. Univ. of Ill. Found., 402 U.S. 313, 333 (1971)), aff'd sub nom. Canonsburg Gen. Hosp. v. Burwell, 807 F.3d 295 (D.C. Cir. 2015); cf. Paulo v. Holder, 669 F.3d 911, 918 (9th Cir. 2011) (citing 18 James W. Moore *et al.*, Moore's Federal Practice § 132.02[2][c] (3d ed. 2010) ("If a new . . . factual assertion raised in the second action is relevant to the issues that were litigated and adjudicated previously, the prior determination of the issue is conclusive on the issue despite the fact that new evidence . . . [was not] introduced into evidence, or otherwise urged.")).

Even if preclusion is not appropriate, the SF-135 fails to cast doubt on the adequacy of the IRS's search that the Court evaluated in Powell V. This is because the Service's efforts to track down Form 706 using multiple DLNs were sufficient and led to the ultimate conclusion

9

"that the record sought was not found in the location where the [Federal Records Center] would expect to find [the] document." ECF No. 66 (Def. Opp.) at 7–8 (quoting Powell V, No 17-278, ECF No. 78-4 (Declaration of Joy E. Gerdy Zogby), ¶ 20); see Iturralde v. Comptroller of Currency, 315 F.3d 311, 315 (D.C. Cir. 2003) (adequacy of FOIA search determined "not by the fruits of the search, but by the appropriateness of the methods"). The Court thus declines to alter its prior finding in Powell V or reconsider its Opinion here.

    B.  Requests Subject to Summary Judgment

Powell also challenges the Court's grant of partial summary judgment to Defendant with respect to two requests, disputing its finding that the Service adequately searched for Andrew Powell's Form 706 and the Powell Printing Company's Form 813 for multiple tax years.

"FOIA cases typically and appropriately are decided on motions for summary judgment." Defs. of Wildlife v. U.S. Border Patrol, 623 F. Supp. 2d 83, 87 (D.D.C. 2009) (citing Bigwood v. U.S. Agency for Int'l Dev., 484 F. Supp. 2d 68, 73 (D.D.C. 2007)). For an agency to prevail on summary judgment, it must demonstrate that it performed an adequate search for the requested records, id. at 91, and did not improperly withhold any responsive documents. Id. at 87 (quoting Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981)). "An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" Valencia-Lucena v. U.S. Coast Guard, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting Truitt, 897 F.2d at 542). In reviewing the reasonableness of an agency's search, courts focus their inquiry on "the methods used to carry out the search, not . . . the search results." Rodriguez v. Dep't of Def., 236 F. Supp. 3d 26, 34 (D.D.C. 2017). For that reason, "the failure of an agency to turn up" specific records "does not alone render a search inadequate." Iturralde, 315 F.3d at 315. Instead, to satisfy this standard,

10

an agency "must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." Oglesby v. U.S. Dep't of Army, 920 F.2d 57, 68 (D.C. Cir. 1990). "[A]n agency is only required to search those record systems that are likely to turn up the information requested." Schoenman v. FBI., 764 F. Supp. 2d 40, 45 (D.D.C. 2011) (internal quotation marks and citation omitted).

   1. *Andrew Powell's Form 706*

In seeking reconsideration of the Court's determination on his request for Andrew Powell's Form 706 federal-estate-tax return, Plaintiff does not directly challenge the IRS's search methods. See Powell, 2020 WL 3605774, at *9 (citing Thomas Decl., ¶¶ 71–74). Instead, he identifies various other tax documents, including a 2015 business-master file (BMF) transcript for the Andrew Powell Trust and a 1993 individual-master file (IMF) transcript for Amelia Powell, in an apparent attempt to contradict the Service's conclusion that a master file for Andrew Powell, where a Form 706 would be stored, does not exist. See Pl. Mot. to Recon. at 13; ECF No. 71 (Pl. Reply) at 10. Neither of these cited documents, however, calls into question the adequacy of Defendant's search. As the Service reasonably explains, the existence of the Andrew Powell Trust BMF transcript, which was previously produced to Plaintiff, does not indicate the existence of a Form 706, a different tax record, for Andrew Powell, a taxpayer different from the trust entity. See Def. Opp. at 12. Similarly, it is unclear — and Plaintiff does not offer any explanation — how an IMF transcript for Amelia Powell bears on Defendant's search for the Andrew Powell Form 706 at issue.

Additionally, Plaintiff maintains that Defendant failed to search the FRC, see Pl. Mot. to Recon. at 13, and points to what he maintains are the first two pages of a Form 706 filed for Andrew Powell, see Pl. Reply at 10 (citing ECF No. 42-7 at 1–2), to refute the sufficiency of the

Service's efforts. These arguments simply rehash Plaintiff's summary-judgment Opposition and do not provide any valid reason to alter the Court's decision. See ECF No. 42 (Pl. MTD/MSJ Opp.) at 15. Plaintiff does, however, identify a small factual discrepancy that bears correcting. In its Opinion, the Court expressly considered the partial Form 706 for Andrew Powell, but appears to have erroneously noted that Plaintiff had received the document from the FOIA Officer at NARA in June 2020, Powell, 2020 WL 3605774, at *9, when, as discussed above, those June 2020 NARA communications related to the Form 706 for William A. Powell. The details of how Powell obtained his abridged copy remain unknown to the Court. See Pl. MTD/MSJ Opp. at 15; ECF No. 42-7; see also ECF No. 47 (Def. MSJ Reply) at 8 ("Powell does not explain where or how he located those two pages or why he does not have a complete copy."). In any case, this error does not alter the Court's determination that the two pages fail to cast doubt on the adequacy of the IRS's search. See Powell, 2020 WL 3605774, at *9 (finding reasonable IRS's explanation that even if Form 706 still existed, it remained unable to locate it).

The Court concludes that its findings are supported by the factual record, and reconsideration is thus unwarranted.

  2. *Powell Printing Company's Form 813*

Powell last contends that the IRS never established the adequacy of its search for certain Forms 813 for the Powell Printing Company. See Pl. Mot. to Recon. at 14. Such a contention overlooks the Court's explicit mention of the Company in its discussion of the Forms 813 requests more broadly. Powell, 2020 WL 3605774, at *11. Perhaps Powell is calling attention to the fact that the Opinion there, but not elsewhere, mischaracterized the relevant tax years of his Powell Printing Company request as 1987–1997, id., not 1987–2007. Id. at *3, *11; ECF No. 9-19 (Nov. 26, 2018, Document Request). To the extent that this typo caused confusion, the

Court now clarifies that its consideration of Defendant's search for the Powell Printing Company Forms 813 covered those documents for the full 1987–2007 period — as requested by Powell and searched for by the IRS. See Thomas Decl., ¶¶ 50, 61–65.

Plaintiff's additional challenges to the Court's Forms 813 ruling echo arguments previously raised in his Opposition papers, and they once again fall short. Contrary to Powell's claims, see Pl. Mot. to Recon. at 14; Pl. Reply at 11, the IRS did set out a "detailed account of [its] searches for [this form]." Powell, 2020 WL 3605774, at *11; see Thomas Decl., ¶¶ 41–54, 61–65. Thomas first searched for the Forms by looking for associated non-master file transcripts in the Information Data Retrieval System (IDRS). Powell, 2020 WL 3605774, at *11 (citing Thomas Decl., ¶ 52). When her search failed to identify any responsive documents, she turned to an Automated Non-Master File (ANMF) System specialist, whose search of that database also came up empty. Id. (citing Thomas Decl., ¶¶ 52–53). Thomas then searched the IDRS for master-file payment transactions using various command codes and the two employer identification numbers (EINs) provided by Plaintiff. See Thomas Decl., ¶¶ 61–62 (describing how first EIN produced information results for Powell Printing Company, but second one did not). Although these searches returned several forms for the Powell Printing Company, based on the IRS's retention schedules, none of these forms contained or attached any associated Forms 813. Id., ¶¶ 63–65.

Powell also takes issue with the description of the ANMF specialist's search, arguing that the IRS omitted the identity of the person and more specific details about the search parameters and findings. See Pl. Reply at 11. The Court, however, explicitly rejected this same argument when raised by Plaintiff in relation to a separate request, explaining that "FOIA does not require this level of detail" to deem a search reasonably specific enough. Powell, 2020 WL 3605774, at

*9 (citing Dillon v. DOJ, 102 F. Supp. 3d 272, 282 (D.D.C. 2015)).  Indeed, "an agency's declarant need not have participated directly in the actual processing of a FOIA request" as long as she has "personal knowledge of the procedures used in handling [the] request and . . . familiarity with the documents in question."  Dugan v. DOJ, 82 F. Supp. 3d 485, 496 (D.D.C. 2015) (internal quotation marks and citation omitted); see also SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1201 (D.C. Cir. 1991) (crediting affidavit of SEC employee that recounted efforts of other employees because she was "in charge of coordinating" agency's search efforts and therefore was "the most appropriate person to provide a comprehensive affidavit").

Finally, the Court already addressed Powell's contention that the IRS failed to adequately search additional databases for the Form, see Powell, 2020 WL 3605774, at *11–12, and credits Defendant's conclusion that there was no other way to search for the requested records.  See Thomas Decl., ¶ 67.  The Court consequently sees no good reason to disturb its finding that the IRS's search here was reasonably tailored to yield any responsive documents.

### IV. Conclusion

For the reasons stated above, the Court will deny Plaintiff's Motion for Reconsideration.  A separate Order so stating will issue this day.


/s/ James E. Boasberg
JAMES E. BOASBERG
United States District Judge


Date:  November 30, 2020